# United States Court of Appeals
# for the Fifth Circuit

───────────

No. 25-60400

───────────

United States Court of Appeals
Fifth Circuit

**FILED**

August 3, 2026

Lyle W. Cayce
Clerk

Claudia Marilyn Saravia Martinez,

*Petitioner*,

*versus*

Todd Wallace Blanche, *Acting U.S. Attorney General*,

*Respondent*.

───────────────────────────────

Petition for Review of an Order of the
Department of Homeland Security
Agency No. A208 743 320

───────────────────────────────

Before Haynes, Higginson, and Ho, *Circuit Judges*.

Per Curiam:

Equitable tolling is not appropriate in this case. The petition for review is accordingly dismissed as untimely.

No. 25-60400

JAMES C. HO, *Circuit Judge*, concurring:

The court today declines to apply equitable tolling in this case. I concur. As I've previously written, equitable tolling is unavailable under 8 U.S.C. § 1252(b)(1). *See Mejia-Vasquez v. Bondi*, No. 25-60386 (5th Cir. Sept. 22, 2025) (Ho, J., dissenting) (unpublished order).

\* \* \*

An alien seeking judicial review of a final order of removal must file a petition for review "not later than 30 days" from the order. 8 U.S.C. § 1252(b)(1). This 30-day deadline is a non-jurisdictional, but nonetheless mandatory, claims-processing rule under governing Supreme Court and circuit precedent. *See Riley v. Bondi*, 606 U.S. 259, 263 (2025) (holding that § 1252(b)(1) is a non-jurisdictional claims-processing rule); *Liao v. Bondi*, 162 F.4th 519, 524 (5th Cir. 2025) (holding that § 1252(b)(1) is mandatory).

As the Supreme Court recently reiterated, "'the mere fact that a time limit lacks jurisdictional force does not render it malleable.'" *Enbridge Energy, LP v. Nessel*, 608 U.S. \_, \_, 146 S. Ct. 1074, 1081 (2026) (cleaned up) (quoting *Nutraceutical Corp. v. Lambert*, 586 U.S. 188, 192 (2019)). Some non-jurisdictional rules nevertheless remain "'mandatory'" and "'not susceptible of'" equitable tolling. *Id.* at 1081–82 (quoting *Nutraceutical*, 586 U.S. at 192).

Federal Rule of Appellate Procedure 26(b) makes clear that courts "may not extend the time to file" a petition for review "unless specifically authorized by law." FED. R. APP. P. 26(b). And there is no such authority here. To the contrary, equitable tolling is inconsistent with the text, structure, and context of 8 U.S.C. § 1252(b)(1).

No. 25-60400

## I.

Claudia Marilyn Saravia Martinez, a Salvadoran native, was removed to El Salvador after receiving a final order of removal. Later, she illegally reentered the United States. So the Department of Homeland Security reinstated her final order of removal. She now seeks review of the reinstatement order.

Our precedents make clear that we have jurisdiction to review orders of reinstatement. *See Argueta-Hernandez v. Garland*, 87 F.4th 698, 705 (5th Cir. 2023), *abrogated on other grounds by Riley*, 606 U.S. 259 (finding jurisdiction because "an order reinstating a prior removal order is itself a final removal order"). So I am duty-bound under our court's rule of orderliness to hold that we have jurisdiction over the petition for review.[1]

Saravia Martinez concedes that her petition is untimely under 8 U.S.C. § 1252(b)(1). But she urges the court to apply equitable tolling to permit her otherwise untimely filing.

---

[1] But to be clear, the governing statute grants us jurisdiction to review "final order[s] of removal." 8 U.S.C. § 1252(a)(1). And "a reinstatement order is not literally an 'order of removal' because it merely reinstates a previously issued order of removal or deportation." *Ojeda-Terrazas v. Ashcroft*, 290 F.3d 292, 295 (5th Cir. 2002). *See also Bhaktibhai-Patel v. Garland*, 32 F.4th 180, 195 (2nd Cir. 2022) ("[Our court's] questionable precedent that implicitly holds that a reinstatement decision itself qualifies as a final order of removal under § 1252 . . . rests on an unstable foundation."); *Ruiz-Perez v. Garland*, 49 F.4th 972, 982 (5th Cir. 2022) (Oldham, J., dissenting) ("The best reading of the applicable provisions is that a reinstatement decision is not an order of removal."); *E.E.V. v. Blanche*, _F.4th _, _, 2026 WL 1948859, at *21 (7th Cir. July 6, 2026) (Brennan, C.J., dissenting) ("A reinstatement order is not a 'final' order of removal."); *Laureano v. Att'y Gen.*, _F.4th _, _, 2026 WL 1502683, at *15 (3rd Cir. May 29, 2026) (Matey, J., dissenting) ("A reinstatement decision is not [a final order of removal] because . . . it cannot 'affect the validity of a previously issued order of removal or render that order non-final.'") (quoting *Riley*, 606 U.S. at 269).

No. 25-60400

## II.

Federal statutes of limitation are presumptively subject to equitable tolling. *See, e.g., Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95–96 (1990) (applying a "rebuttable presumption of equitable tolling").

"The *Irwin* presumption, however, is just that—a presumption." *Arellano v. McDonough*, 598 U.S. 1, 7 (2023). *Cf. Environment Texas Citizen Lobby v. ExxonMobil Corp.*, 123 F.4th 309, 348 (5th Cir. 2024) (Ho, J., in support of dismissing rehearing en banc as improvidently granted) (same). "[T]he word 'rebuttable' means that the presumption is not conclusive." *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 137–38 (2008).

To overcome the presumption, courts need not identify the "clearest command" from Congress. *Enbridge Energy*, 146 S. Ct. at 1084. We simply "look[] to text, structure, and context" and ask if there are "'good reasons' to conclude that tolling should not be available." *Id.* at 1084–85.

At bottom, "whether equitable tolling is available is fundamentally a question of statutory intent." *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014). After all, "the doctrine effectively extends an otherwise discrete limitations period set by Congress." *Id.*

Here, there are a number of good reasons to think that Congress did not want equitable tolling for petitions filed under § 1252(b)(1). For one, equitable tolling would contradict the plain text of Federal Rule of Appellate Procedure 26(b), which restricts courts of appeals from extending the filing deadline for petitions for review. For another, equitable tolling would be inconsistent with the "text, structure, and context" of § 1252(b)(1). *Enbridge Energy*, 146 S. Ct. at 1079.

4

### A.

Under Federal Rule of Appellate Procedure 26(b), courts of appeals "may not extend the time to file" a petition for review "unless specifically authorized by law." Fed. R. App. P. 26(b). And no other law "specifically authorize[s]" extending the deadline to file a petition for review filed under § 1252(b)(1).

That should be more than enough to overcome the presumption of equitable tolling discussed in *Irwin*. As the Supreme Court explained in *Nutraceutical*, "Rule 26(b) says that the deadline for the precise type of filing at issue here may not be extended." 586 U.S. at 193. Rule 26(b) "express[es] a clear intent to compel rigorous enforcement of [the filing] deadline, even where good cause for equitable tolling might otherwise exist." *Id.* Because Rule 26(b) "show[s] a clear intent to preclude tolling," courts of appeals are "without authority to make exceptions merely because a litigant appears to have been diligent, reasonably mistaken, or otherwise deserving." *Id.* at 192–93.

To be sure, *Nutraceutical* applied Rule 26(b) to a rule of civil procedure, rather than a statute like § 1252(b)(1). But nothing in *Nutraceutical* suggests that a different rule should apply to statutes. To the contrary, *Nutraceutical* indicates that the same principles apply to both rules and statutes. *See id.* at 193 ("Courts may not disregard a properly raised procedural rule's plain import any more than they may a statute's."). In other contexts, the Court has likewise observed that a federal procedural rule is, "in every pertinent respect, as binding as any statute duly enacted by Congress." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 255 (1988). And federal courts "have no more discretion to disregard the Rule's mandate than [we] do to disregard constitutional or statutory provisions." *Id. Cf. Berk v. Choy*, 146 S. Ct. 546, 552 (2026) ("[W]e interpret the Federal Rules the

same way we interpret federal laws more generally: by giving them their 'plain meaning.'").

Three other circuits have narrowly construed Rule 26(b) to apply only to deadlines imposed by rules—and not to deadlines imposed by statutes. *See Nelson v. Sec. & Exch. Comm'n*, 138 F.4th 514, 523 (D.C. Cir. 2025); *Oxlaj-Perez v. Blanche*, 174 F.4th 516, 527 (6th Cir. 2026); *E.E.V. v. Blanche*, _ F.4th _, _, 2026 WL 1948859, at *17 (7th Cir. July 6, 2026). But that reading effectively guts the text of Rule 26.

So I agree with the circuits that have addressed the issue to date and construed Rule 26(b) to forbid equitable tolling regardless of whether the deadline is imposed by statute or rule. *See, e.g.*, *Kern v. Sec. & Exch. Comm'n*, 724 Fed. App'x 687, 687 (10th Cir. 2018) (applying Rule 26(b) to forbid equitable tolling under 15 U.S.C. §§ 77i, 78y(a)(1), 80b-13); *Metal Conversion Techs., LLC v. U.S. Dep't of Transportation*, 2023 WL 4789084, at *1 (11th Cir. July 27, 2023) (applying Rule 26(b) to forbid equitable tolling under 49 U.S.C. § 5127(a)); *Oja v. Dep't of the Army*, 405 F.3d 1349, 1359 (Fed. Cir. 2005) (applying Rule 26(b) to forbid equitable tolling under 5 U.S.C. § 7703(b)(1)); *see also Young v. Sec. & Exch. Comm'n*, 956 F.3d 650, 659 (D.C. Cir. 2020) (Williams, J., concurring) (Rule 26 "appears to . . . throw an insuperable roadblock" to equitable tolling under 15 U.S.C. §§ 77i(a), 78y(a), 80a-42(a), 80b-13(a)).

## B.

Section 1252(b)(1)'s "text, structure, and context" further reinforce the conclusion under Rule 26(b) that equitable tolling is unavailable. *Enbridge Energy*, 146 S. Ct. at 1079. *See also E.E.V.*, _ F.4th at _, 2026 WL 1948859, at *26 (Brennan, C.J., dissenting) (concluding "equitable tolling is unavailable" under § 1252(b)(1)).

First, the text. Section 1252(b)(1) uses the word "must." That indicates that the deadline is mandatory—as our court concluded in *Liao*, 162 F.4th at 524. It likewise suggests that equitable tolling is not available—as the Supreme Court recently concluded in *Enbridge Energy*. There the Court interpreted the phrase "shall be filed within 30 days" as "consistent with treating its deadline as mandatory and not subject to equitable tolling." 146 S. Ct. at 1082. *Cf. Ft. Bend Cnty. v. Davis*, 587 U.S. 541, 549 n.5 (2019) ("The Court has reserved whether mandatory claim-processing rules may ever be subject to equitable exceptions.") (cleaned up).

Second, as for structure: Congress explicitly authorized the extension of deadlines in a nearby provision. Section 1252(b)(3)(C) imposes a 40-day deadline for aliens to "serve and file a brief in connection with a petition for judicial review." 8 U.S.C. § 1252(b)(3)(C). But it expressly states that the court may extend these deadlines "upon motion for good cause shown." *Id.*

No such language appears, by contrast, in § 1252(b)(1). By permitting extensions in one provision, but not the other, "Congress showed that it knows how to write such exceptions when it wants to do so." *Garcia Morin v. Bondi*, 152 F.4th 626, 634 (5th Cir. 2025). "When Congress has already considered equitable concerns and limited the relief available, 'additional equitable tolling would be unwarranted.'" *Arellano*, 598 U.S. at 10 (citation omitted). *See also Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (cleaned up); *Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019) ("Atextual judicial supplementation is particularly inappropriate when, as here, Congress has shown that it knows how to adopt the omitted language or provision.").

As for context, the Supreme Court has observed that the Immigration and Nationality Act "reflect[s] an intent on the part of Congress that deportation orders are to be reviewed in a timely fashion after issuance." *Stone v. INS*, 514 U.S. 386, 394 (1995), *abrogated on other grounds by Riley v. Bondi*, 606 U.S. 259 (2025).

Indeed, since its original enactment in 1952, Congress has frequently shortened the filing deadline to streamline the adjudication of immigration appeals.

The 1961 INA amendments, for example, made the petition for review the "sole and exclusive procedure" for judicial review, and limited the filing period to six months. Pub. L. 87-301, § 5(a), 75 Stat. 657 (codified at 8 U.S.C. § 1105a(a) (1964)). Previously, aliens could seek injunctive relief from district courts under the Administrative Procedure Act, and petition for a writ of habeas corpus. But Congress was "'disturbed'" by "'the growing frequency of judicial actions being instituted by undesirable aliens whose cases have no legal basis or merit.'" *Foti v. INS*, 375 U.S. 217, 225 (1963). These actions were often "'brought solely for the purpose of preventing or delaying indefinitely their deportation from this country.'" *Id.* So Congress enacted significant reforms "to abbreviate the process of judicial review of deportation orders . . . whereby persons subject to deportation were forestalling departure by dilatory tactics in the courts." *Id.* at 224.

Decades later, Congress remained dissatisfied with delays in the immigration system. So it enacted the Immigration Act of 1990. *See* Pub. L. 101–649, 104 Stat. 4978. Like earlier INA amendments, "a principal purpose of the 1990 amendments . . . was to expedite petitions for review and to redress the related problem of successive and frivolous administrative appeals and motions." *Stone*, 514 U.S. at 400. Among other things, the amendments "cut in half the time for seeking judicial review of the final

deportation order, from 180 to 90 days," and directed the Attorney General to "promulgate regulations limiting the number of reconsideration and reopening motions that an alien could file." *Id.* Aliens convicted of aggravated felons were further limited to just 30 days to file. *See* 8 U.S.C. § 1105a(a)(1) (1993).

Years later, Congress sought to further expedite immigration proceedings by again amending the INA. In 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA). Pub. L. 104–208, 110 Stat. 3009. IIRIRA "repealed the old judicial-review scheme set forth in § 1105a and instituted a new (and significantly more restrictive) one in 8 U.S.C. § 1252." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 475 (1999). One of the amendment's "major objectives" was "to protect the Executive's discretion from undue interference by the courts; indeed, that can fairly be said to be the theme of the legislation." *DHS v. Thuraissigiam*, 591 U.S. 103, 112 (2020) (cleaned up).

For example, Congress "toed a harder line" and "enlarged the class of illegal reentrants whose orders may be reinstated and limited the possible relief from a removal order available to them." *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 33–34 (2006). It provided that an alien's reinstatement order was "not subject to being reopened or reviewed," that "the alien is not eligible and may not apply for any relief," and that "the alien shall be removed under the prior order at any time after the reentry." 8 U.S.C. § 1231(a)(5). IIRIRA's amendments also restricted the filing deadline for petitions for all aliens—aggravated felon or not—from 90 days to the current 30-day timeline in § 1252(b)(1).

This history reinforces the conclusion from text and structure that Congress did not intend for the deadline set forth in § 1252(b)(1) to be subject to equitable tolling.

Finally, administrative concerns weigh further against equitable tolling. *See Boechler, P.C. v. Comm'r*, 596 U.S. 199, 210 (2022) (noting "administrative problem[s]" in "allowing equitable tolling").

Despite Congress's repeated efforts to rein in delays, substantial backlogs in immigration proceedings remain. As of the third quarter of 2025, for example, there were almost four million pending immigration cases. *See* Executive Office for Immigration Review, Adjudication Statistics (July 2025). "[S]uch proceedings have often lasted many months and even years." *Riley*, 606 U.S. at 272, n*. That kind of delay "is surely not what Congress anticipated when it enacted the streamlined procedure." *Id. See also E.E.V.*, _ F.4th at _, 2026 WL 1948859, at *27 (Brennan, C.J., dissenting) ("Permitting equitable tolling . . . undermines the statute.").

Take this case. The proceedings here have been ongoing for almost a decade. Equitable tolling would further compound the potential for such delays, incentivizing aliens to file stale petitions with long-shot claims and "risking significant waste of resources." *Enbridge Energy*, 146 S. Ct. at 1084. Recognizing equitable tolling may "create serious administrative problems by forcing the [government] to respond to, and perhaps litigate, large numbers' of untimely petitions for review, 'accompanied by requests for 'equitable tolling' which, upon close inspection, might turn out to lack sufficient equitable justification.'" *Brockamp*, 519 U.S. at 352. *See also Santana-Gonzalez v. Bondi*, 172 F.4th 736, 747 (9th Cir. 2026) (VanDyke, J., concurring) ("As caseloads increase, it takes our court longer and longer to deal with utterly meritless immigration petitions, and our court further delays the process of all immigration enforcement. It's a win-win for everyone— except the rule of law.").

It's telling that, in its numerous INA amendments spanning nearly three-quarters of a century, Congress has not once authorized equitable relief

from the filing deadline.  Considering the significant delays that have plagued our immigration system for decades, Congress surely "would . . . have wanted to decide explicitly whether, or just where and when, to expand the statute's limitations periods, rather than delegate to the courts a generalized power to do so wherever a court concludes that equity so requires." *Brockamp*, 519 U.S. at 352.  "The nature and potential magnitude of the administrative problem suggest that Congress decided to pay the price of occasional unfairness in individual cases . . . in order to maintain a more workable [immigration] system." *Id.*  This is not the "rare case" where "the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 (1989) (citation omitted) (cleaned up).  Nor is it "a case in which competing interpretations are equally plausible; it is one in which Congress's choice is evident." *Arellano*, 598 U.S. at 14.

Permitting equitable tolling would be detrimental to the statutory scheme Congress has designed for our immigration system.  *Cf. Enbridge Energy*, 146 S. Ct. at 1085 (citation omitted) ("[C]ourts must consider equitable tolling's 'incongruen[ce] with the statutory scheme' overall.").

\* \* \*

Equitable tolling is never available under § 1252(b)(1).  Accordingly, I concur in the dismissal of the petition for review as untimely.

No. 25-60400

Stephen A. Higginson, *Circuit Judge*, dissenting:

In holding that the thirty-day filing deadline in 8 U.S.C. § 1252(b)(1) is a non-jurisdictional claims-processing rule, *Riley v. Bondi*, 606 U.S. 259 (2025), left a class of people—who had yet to petition for review of their immigration cases while they pursued humanitarian relief but who had been ordered removed more than thirty days prior—in limbo. Pre-*Riley*, we required these people to wait for the conclusion of their humanitarian proceedings to petition for review. *See Ponce–Osorio v. Johnson*, 824 F.3d 502, 507 (5th Cir. 2016); *Argueta-Hernandez v. Garland*, 87 F.4th 698, 706 (5th Cir. 2023). Post-*Riley*, they now must persuade either courts or the government to absolve their newfangled untimeliness.

Recognizing the practical difficulties that *Riley* would prompt, Justice Alito, writing for the majority, and Justice Sotomayor, in dissent, offered a few suggestions. First, the government could "alert the [relevant] court of appeals" to the pendency of humanitarian proceedings so that the court could "wait" or hold in abeyance final removal decisions until the humanitarian proceedings finished. *Riley*, 606 U.S. at 272.[1] Second, the government could, "make[] a general practice" of "declining to press for enforcement of the 30-day filing rule," as it did for Riley. *Id.*[2] Last, the courts of appeals themselves could consider "applying standard principles of

---

[1] We have granted such stays, including over government opposition. *See, e.g.*, *Mejia-Vasquez v. Bondi*, No. 25-60386, Order, Dkt. No. 76-2 at 3 (5th Cir. Sept. 22, 2025).

[2] Indeed, and contrary to government counsel's representation at oral argument, the government has done so in other cases before our court. *See, e.g.*, *Urquilla-Osorio v. Bondi*, No. 25-60131, Resp't 28(j) Letter, Dkt. No. 49 at 1–2 (5th Cir. Sept. 19, 2025).

No. 25-60400

equitable tolling," "likely available" since § 1252(b)(1)'s deadline is non-jurisdictional. *See id.* at 302–03 (SOTOMAYOR, J., dissenting in part).[3]

Our court in a single-judge order denied without explanation Ms. Saravia Martinez's request to hold her case in abeyance pending resolution of her withholding-only proceedings, even though an asylum officer found she had a reasonable fear of persecution and torture in her home country of El Salvador because MS-13 gang members raped her and threatened to kill her. Further, the government has refused to exercise its discretion to waive § 1252(b)(1)'s deadline here. Regrettably and mistakenly, a majority of this panel today announces that equitable tolling "is not appropriate in this case" yet gives no "this case" explanation or analysis.

Legally, I would respectfully disagree with my colleague, JUDGE HO, and agree with my colleagues in other circuits that have concluded equitable tolling is available under § 1252(b)(1), for the reasons they fully and ably articulate. *See Oxlaj-Perez*, 174 F.4th at 522–29; *E.E.V.*, 180 F.4th at 973–79. Again, no circuit post-*Riley* has deemed equitable tolling unavailable under § 1252(b)(1), nor do we here.

Factually, Ms. Saravia Martinez is the poster child for equitable tolling. She diligently filed her petition and stay motion the month after *Riley*'s issuance. She faced an extraordinary (and involuntary) catch-22. Our case law at the time her removal was reinstated dictated that she could not appeal until her humanitarian proceedings concluded. *See Ponce-Osorio*, 824 F.3d at 505–07. Years later, *Riley* told her that her petition for review was already too late. "A change in binding case law that makes it impracticable . . .

---

[3] Other courts have done so. *See, e.g.*, *Oxlaj-Perez v. Blanche*, 174 F.4th 516, 522–29 (6th Cir. 2026); *E.E.V. v. Blanche*, 180 F.4th 954, 973–79 (7th Cir. 2026). The government identifies no court that has declined to find equitable tolling available under the statute post-*Riley*.

No. 25-60400

or impossible . . . for a party to ever have timely sought relief can constitute an extraordinary circumstance for the purpose of equitable tolling." *E.E.V.*, 180 F.4th at 981. If the government returns Ms. Saravia Martinez to El Salvador, she stands to face the very harm—rape and death—that merited her positive reasonable fear determination.

I respectfully dissent.